and we have for appellant Anna Grabowski and for the appellee Claire, is it Burl? Claire Burle. Burle? Okay, please proceed. Thank you for being here early both of you, we appreciate it. My name is Anna Grabowski and as you stated I'm here for the appellant Ameren. I have just a couple of issues to raise on argument here. At first glance this case seems very similar to the Illinois Supreme Court case of Kasson's Transport Company. And admittedly, although there are similarities, there are differences with this particular case such that the Kasson's case should not be followed. Ameren filed an answer in response to an application for enforcement of judgment and a couple of months later it also filed a motion for leave to file a counterclaim. And part of the affirmative defenses were a request for equitable relief in that the employee or former employee, Mr. Dallas, would be unjustly enriched should he be allowed to continue receiving benefits under the Workers' Compensation Act from Ameren. Kasson's involves an employee who after receiving wage differential awards for a 10 year period of time, the employer, excuse me, the employee worked his way back up to earnings that were equal to or exceeded his wage at the time of the accident. And the Workers' Compensation Act allows for modification of those types of benefits for a period of 30 months. Clearly that time period was greatly exceeded by the passage of 10 years. In addition, the employer noted only a change in the former employee's earnings and which the court found that is irrelevant. What is important is whether or not there is a change, either a diminution or increase of the physical incapacity that was suffered at the time of the accident. Now in this particular case, at the trial of the matter before the arbitrator, the employee claimed that he was permanently and totally disabled. He cited a number of limitations to his ability to work. However, the arbitrator did find that he was not permanently and totally disabled. There was no medical evidence to support that and he was not employed at the time. The arbitrator did find wage differential benefits were due and Ameren did pay those benefits up until the time that they learned that he was working as a lineman again, which was his original line of employment, doing regular lineman duties. And its position is that it is entitled to a hearing by the lower court so that it can present evidence to show that the employee would be unjustly enriched if he continues to receive his current wages while working as a lineman for a subsequent employer. As a matter of fact, his wages are about 150% of what he received previously, as well as to continue to collect benefits from Ameren. In this case, in addition to alleging he was permanently and totally disabled, although vocational experts testified that they felt the employee was capable of working, he didn't make any type of diligent job search. Or make any type of inquiry. The first job that he has to the knowledge of Ameren was when he went back to work as a lineman doing essentially what he was doing at his previous occupation. Now, the act at the time allowed for a 30-month period of review to determine whether or not a person's disability was still present or had diminished in any way. However, the employee was not employed, to our knowledge, had no type of employment, did not seek employment until shortly after that 30-month period ran. It's our position that the employee's inaction by not even seeking work should not be to his benefit. Additionally, during that time period, the legislature changed the law such that it currently allows 60 months for a period of review. The time in which he obtained that employment would fall within that 60 months. Unfortunately, it is applicable to injuries occurring on or after February 1 of 1996, and that date is after the date of the accident. Would you have even fallen within that 60-month period? Excuse me? Would you have even fallen within that 60-month period? Yes, we would have definitely fallen within that 60-month period. And you've cited nothing that says we can apply that retroactively in any fashion, correct? No, and we've determined that it would reach conclusion faster since there was already a case pending in the circuit court to enforce the judgment, that it would reach conclusion quicker if we just followed that course of action rather than filing before the commission. Because it's our understanding from the reading of that law and when it applies that it's not applicable to this particular case. So is workers' compensation your specialty? Yes, it is, and it is not mine. Let me ask a question. It seems to me that my reading of the statute results with a totally and permanently disabled employee's benefits can be terminated when the disability no longer exists, but a partially permanently disabled employee's benefits pursuant to a wage differential may not when you read the statute after these two time periods expire. That is correct. It does state some time periods on which a review needs to be undertaken. So does that make sense? Well, clearly the legislature has changed the law such that they determined 30 months was not enough time to allow for any changes to occur or not occur. In addition, it's the employer's position that since he is back to work at the same type of employment that he would be unjustly enriched. There is no provision for any type of credit in the act either, nor if it should happen, he's had a couple of back surgeries including infusion. If he was injured at this particular job, he would also be able to seek, depending on the injury, permanent total disability benefits and or wage differential benefits from his current employer. Without any type of reduction for what he was receiving from Amrit. And thus he's clearly receiving a windfall if he's working in the same capacity at the same wages and is being unjustly enriched should he be continued to receive those benefits at the same time that he's working. I want to make sure that I understand the answer to Justice Myers' question. If this was a permanent total disability, it can be reviewed until the end of time. Is that right? You know what, I am uncertain, although that is my specialty. Well, typically, if it genuinely is, I suppose there are only going to be a handful of cases where there is some recovery that causes you to come back in much, much, much later. I think Justice Myers was saying in her reading of the statute, if there is a change, you can come back in. But for the wage differential, it's like there is a statute of limitations saying you've got 30 months or 60 months, and if there is a change after that, that's just tough. It can't be changed. That's your view of the law, and that's why you're seeking equitable relief. That's correct. So there's no statutory authority you can cite to me that would allow for equitable relief at this stage. There is none other than what is stated in the briefs, in the cases, in our brief regarding the cases and when jurisdiction is allowed in courts of equity. And equity is not served in this matter to allow this situation to continue to occur. Opposing counsel brought out in brief, and I assume she'll do so in oral arguments also, that petitioner is currently working as a lineman. We were not granted leave to file our affirmative defense, etc. Those are not facts and evidence, but they're included in the record in our application and amended complaint that the employer did receive information that he was employed in this line of employment and what his wages were and would be evidence that the employer could present at a hearing on the merits. They are not facts and evidence at present, but those versions are on the record. May I continue? You may. Additionally, it's been asserted in Mr. Dallas' brief that we have abandoned our argument that the application for enforcement of judgment in order with regard to the judgment should not be reversed. However, although not specifically briefed, our arguments as to why equitable relief should be granted are, of course, in opposition to the argument that he should continue to receive those benefits. In our conclusion, there were a number of issues decided in the lower court's order that included denying our motion for a request for leave to file the affirmative defenses and counterclaim as well. It was done at the same time that the enforcement order was entered, so we're requesting reversal of the entirety of that. We also requested, while the matter was pending, a stay of the enforcement of judgment. While the Workers' Compensation Act is to allow for expedient and equitable protection of the finances of the employee, this particular employee is not being damaged for there to be a stay of enforcement while he's collecting wages that greatly exceed his prior wages. Of course, if you come in in equity, I wonder if the trial court looked askance at not paying what you're legally obligated to pay in advance of there being a determination that you are no longer obligated to pay it. Because the assertion that there's no damage rests on your ability to prove that, in fact, he is reemployed and, in fact, does have a good wage. And then you get to also the legal question of, well, does that make any difference? Yet, you stopped paying when Ameren became aware or believed that he was employed. Right. And we believe we have very valid information to show that. And there were two methods to bring this matter before the court. And the one is to bring it before the commission saying, would you please review this? The disability has diminished to such an extent that it no longer exists or it's greatly diminished such that it does not affect his physical capacity to be employed in the same line of work. Given that route, the time had run on that or that was our understanding of the reading of the statute. The 30 months had passed and it's pretty much black and white. Your time's up. The other course was to discontinue payments and let the employee file an application for entry of judgment. And to our knowledge, those were the two ways in which to get to the court. I suppose, in hindsight, we could have filed a request for declaratory judgment. But from the time we stopped making the payments to the time the application was filed, it was our understanding that it was going to be very quick. And it was very quick. It was within a couple of months. May it please the court, counsel, my name is Claire Burley and I represent Charles Dallas. I think this case is really, from our perspective, very simple. It has a simple solution. As you know, this case is here because Mr. Dallas filed a 19-G motion to enforce the award, to enforce an entry of judgment at the circuit court because Ameren had just stopped paying benefits. Pursuant to an award that had been issued in June of 2004. Now, Judge Kelly at the circuit court granted our motion for judgment on the pleadings ordering Ameren to comply with the arbitration decision and to pay attorney's fees and costs. Now, the statutory requirement of 19-G is very limited as to what the circuit court can do. There's been no argument or challenge raised by Ameren that anything was done incorrectly in filing this 19-G motion to the circuit court. They're not disputing that they can challenge the award, that the time for challenging the award of 30 months had passed. And there's no argument by Ameren that they stopped paying the award in January of 2009. The purpose of a 19-G is to permit a speedy judgment in cases where there's been a refusal to pay the work comp award and the need to reduce the award to a judgment to compel payment. Now, we've identified cases in our briefs that explain that the court's jurisdiction is very limited and strictly construed. Their inquiry is limited to a determination whether the section's requirements have been met, which they have, and there's no challenge to those section requirements in the filing of that 19-G. And it's also not a vehicle where the employer can come in and challenge the award, and nor is it a proceeding which will allow the reversal of a decision of the industrial commission or the judgment of the circuit court. So the fact that the circuit court did not allow the affirmative defenses alleged by Ameren was correct, and the only tender of full payment of the final award is a defense to the section 19-G petition that had been filed. Counsel, is this your specialty also? Yes, it is. Is there any method by which this award could be challenged at this time? No, there is not. And the Kasson's court, the Kasson's decision addresses that, even though, you know, the constitutional provision was brought up. It was addressed that you look to the act. You look to the act as to what it says, and if it allows for it. There's nothing in the act. I know you want to ask me something. Is there any section that permits the employer to come in, say, if this were a fraudulent situation, if your client had committed fraud in claiming disability? There have, with the changes to the act in 2006, there are fraud provisions now. That is not an allegation. To the very issue of the way... You said there were changes to the act in 2006? Yes, sir. Were those changes subsequent to the Kasson's case, which was handed down in 2006? No, I don't know. Has the General Assembly done anything to your knowledge to respond to the holding in Kasson's? No. It has not changed the holding in Kasson's. Is it your understanding that if this was total permanent, that it could be reviewed at a later time? The act, I believe, gives the right to review a permanent total. It does not... And whether it's right to phrase these as statutes of limitation or review periods. So... And I'm going to phrase this unfairly. So you've got something that's permanent and total, and is not very likely to change, but you can review it forever. And you've got a wage differential, which conceivably could change, and you can only review it for either 30 months or 60 months, depending on which statute applies. And that's the act? That's the act. That's the act. And let me also explain a little bit about wage differentials. When wage differentials are reviewed, they are not changed because of an economic change. They are changed as to a physical. So within that period of time... So if he went to work as a nuclear physicist... And made millions... He's still entitled to that. If his physical condition remains the same. And Amarant certainly wasn't complaining when this man wasn't able to find a job equally paying before he would go back to work, but he's still working within his restrictions, his physical restrictions. Could this be an equal protection violation? The different result that an employer suffers as a result of... Well, the Kasson's court addressed that there was no injury to the employer by the fact that they're upset that they have to continue to pay an award. So I don't know. I would say so much within the scheme of the Work Comp Act, you look to the act itself because of giving up a common law remedy to come under the act. Kasson's focused on the economic. And I wondered whether there had actually been evidence in the Kasson's case of an absence of the disability, a removal of the disability. Of the physical disability? You know, by the fact that they also discussed... Well, you know, I think... I apologize. I think I'm remembering Kasson's to say they didn't need to get to the point to discuss economic. Because, first of all, it was beyond the 30 months. There are other appellate decisions that have limited the wage differential review not to be changed if it's just an economic change. Because disability within the act refers to a physical disability. We have no evidence to give you whether it's a physical disability or not. That is not before you. Is a wage differential different than a permanent partial? Permanent partial? Yes, although they're considered to still be paid in on installment and to be considered kind of a partial disability. So would the arbitrator award here, would it be fair to characterize that as a permanent partial disability award? No, it's only fair to characterize it as an AD1 wage differential. The arbitrator could have... But didn't the arbitrator also pay some TTD? Yes. I thought that the act, if you get the TTD, you're not entitled to the wage differential. Wage differential comes from permanency. It comes to the person. TTD is temporary. Okay, then why isn't it fair to call the wage differential a permanent partial? Because you're saying wage differential only kicks in if there's permanency. Well, there are different ways to look and to award permanency. Permanent partial disability is typically done, you know, the body's divided in weeks and a percentage of the injury at the level of injury. This would have been a body as a whole type of award if the arbitrator had awarded a permanent partial disability. Wage differential is a situation that looks if they can't go back to that particular job they were doing. There is evidence given by vocational experts. Sometimes a person has a job and then they determine, and it's a scheme set up within the statute as to how you look at this and how it is awarded. It's a difference between what they could earn in the job they were injured and what they can earn now out in the field. And your client, in fact, is earning what he earned before. He is. His disability. He is at this point in time. And you believe we're bound by the legislature's tradeoff, and I use the term loosely, tradeoff, here. Yes. And that results in a patently unfair situation to the employer. The employer believes it's patently unfair. There would have to be evidence as to whether this was just an economic disability or a physical disability. Would you agree that without conceding anything in this case, because you've carefully laid out the law, we were talking over the lunch hour about the use of anecdotes in politics. And workman's comp anecdotes typically aren't bandied about. Usually the anecdote is medical malpractice or frivolous lawsuits or whatever, and somebody's got an anecdote to show what the citizen out on the street would think of as a patently unfair result, whether you use that phrase or not. They'd say, well, I don't understand why the law works. Do you see that this could be one of those kinds of anecdotes? I could see where someone could look and say, I don't understand this. All this could happen. Given that the five of us probably don't understand it. You're laying out very good. You're stuck with the Act. That's really your position. It's your job, Your Honors, to look at the Act. And were my client never to find a job, or if he could never find a job and it even went below what the arbitrator decided to award, he could not come back either and say, hey, I can't live on this. I can't survive. If it's beyond that 30-month period of time, he does not have that right as well. So if at the end of 65 months, or 35 months in this case, it became his physical condition worsened, and it was somehow connected to the back surgeries and what happened, he couldn't come back? He could not come back and say, I'm permanently totally disabled. I have the right to more. Did you review the legislative history when they changed it to 60 months? No. And prior, I think in 75, it was 18 months. But no, I didn't. I did. Thank you. Do you do all petitioner's work, or do you do some respondent's work as well? I have been doing petitioner's work for about four years, and prior to that, I was about 16 years respondent. Have you ever argued the other side of this issue? I have not had this particular issue to argue. I certainly understand the argument from the other side. If I can continue as far as what the Kasson's case determined, it looked to the period of time for review. It found that with an 8D1 award, it must be filed within 30 months. It found that the employer suffered no injury and that the court did not give the employer or the employee any right to look outside of the act for relief. It found that this was a tradeoff between employers and employees in substituting statutory or common law remedy and permitting parties to litigate ad infinitum and did not comport with the purpose of the act. That leads us to our request, our cross appeal, for increased attorney's fees and costs. Another purpose of the 19G is to compensate a claimant who is compelled to incur additional costs and attorney's fees. And I think by the fact that there is no statutory right, nothing in the act, and there is a case directly on the point, attorney's fees and costs are especially appropriate in light of that. And we are requesting that the judge's order to be affirmed and those to be awarded. And we will be submitting a revised statement of fees and costs to include argument within a couple of days. And thank you. Thank you. Rebuttal, Ms. Korbesky. Just a couple of matters. I believe I am correctly stating that Kasson's was based solely upon economic recovery of the worker. There were some subpoenaed W-2 forms ten years after the date of the accident and it was solely based upon those W-2 forms that there was a petition for review. Did you go back and read the appellate decision in Kasson's? Yes, I did. I believe I have it with me somewhere here, but I apologize. Did you have a particular question about that? No, I just wondered if there was anything in the record down below that would further support your distinction in Kasson's. I believe in the Supreme Court case it states that there was a subpoena of the W-2 forms. As a matter of fact, I think in a lower court it included the fact that the petitioner no longer lived in this state. I think he was out of state even, so I don't know that they actually had access to him physically in order to determine what his physical capabilities were. And there is no mention of his physical capabilities. The court determined also that basically... You know what, I don't believe there was any mention of his physical abilities or disabilities one way or the other. The review was based solely upon the economic change in circumstances and he had been working for a period of ten years. And finally, after that period of time, was earning an amount that was equal to or exceeded what he had earned ten years before. In this case, at the time of the hearing, although vocational experts on both sides, for the employer and the employee, stated that Mr. Dallas was able to work, other than a couple of inquiries that he stated during his testimony that he made with people in his hometown, he hadn't made any type of job search. To our knowledge, he remained unemployed until the 30 months ran, and then shortly thereafter was his first job where, voila, either a medical miracle occurred or something happened such that he was able to work in the same line of employment. And if allowed to, the employer believes that it can prove that. Although his medical restrictions may not have been lifted or changed at all, what he physically does on his job is the work of a lineman. With regard to the costs and attorney's fees, we admit that the Act provides for the prevailing party to collect the attorney's fees and costs. We don't have any dispute that the time calculated by a petitioner's attorney is anything but fair and accurate. However, with regard to the costs and fees associated with this appeal, it's my understanding that the prevailing party can, again, obtain those, but they can be awarded on the basis of whether or not this appeal is frivolous. And it's our position that this appeal is not frivolous. There is not a case where the court addresses whether or not in a situation such as this that the employer should not be afforded equitable relief. As you pointed out, patently on its face, it's unfair. You don't have to have any particular legal knowledge to look at this situation and see that it's unfair to the employer. There are differences from this case in Kasson's in that there was no request for equitable relief requested. They looked at the due process clause in the Constitution. And also, Kasson's was a case that was ten years later during the pendency of our case. I believe that the law changed in 1995, but it was effective four cases beginning February 1 of 2006. So the law changed between the time that Kasson's was reviewed by the appellate court and the time that the Supreme Court decision came out, I believe. That's all I have. Thank you, Your Honors. Thank you, Counsel. We'll take this matter under advisement.